The lead petitioner is a Sri Lankan citizen who seeks asylum, withholding, and removal and relief under Article 3 of the Convention Against Torture. His claims are based on a fear of persecution from the LTTE, who blame him for the arrest and detention of a fellow member and seek his release, as well as from the persecution of the LTTE. The denial of all three of his applications rests solely on the immigration judge's adverse credibility determination, and the BIA affirmed without opinion. The problem with the immigration judge's credibility determination is that it rests on impermissible grounds, according to this circuit's case law. The grounds are, one, a single discrepancy concerning a date of hire of the alleged terrorist, a detail that's immaterial to the petitioner's account as it reveals nothing about his fear of persecution, and two, on a determination of implausibility of the testimony based on the immigration judge's speculation and conjecture. With regard to the discrepancy, it's about the date of the cook's hire. And to the Sri Lankan police, he said he worked for him for six months, which would have made it 1999. At the asylum interview, he said 1998, and at the hearing, he said 1996. However, the petitioner did explain that he lied to the police because he was afraid for his life. At the asylum interview, he provided the wrong date, but later he'd made a mistake. He realized that he made a mistake, and this is the single discrepancy in the entire record. In addition, the fact that the alleged terrorist that was arrested by the police was his employee at the restaurant is corroborated by an article of a local newspaper, by the business registration. The date of hire of this employee is an insignificant detail. It's not a detail that enhances his claim, thus he has no motive to lie about it. This court in Shah v. the INS has said that adverse credibility findings are not upheld unless the immigration judge or the BIA specifically explain the significance of the discrepancy or points to the petitioner's obvious evasiveness when asked about it. If the discrepancy cannot be viewed as an attempt by the applicant to enhance his claim of persecution, it has no bearing on credibility. The court also quoted in that case Valerio Lopez v. INS, which says that minor inconsistencies in the record such as discrepancies in dates that reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility determination. Here, the immigration judge did not explain how the inaccuracy reflected on the credibility of his persecution claim, except to say that he lied to Sri Lankan police because his best interests were at stake and suggested that he cannot believe him because at the time of the hearing, his best interests were also at stake. Stating that he lied to police because his best interests were at stake is a mischaracterization of the testimony. He actually said that he lied to the police because he was afraid for his life. He didn't want them to know that he knew this alleged terrorist for years, which is consistent with his claim of fear for his safety. His best interests were not at stake. His life was at stake. The immigration judge also used this fact and the fact that the petitioner agreed to help the LTTE as proof of his propensity for not telling the truth. But this is preposterous. It's like saying that if a bank employee was robbed at gunpoint and agrees to hand over the money but instead alerts the police that he's a liar and cannot be believed. The other ground for the incredibility finding is the implausibility. This circuit has repeatedly held that speculation and conjecture alone cannot sustain an adverse credibility finding. Here, the determination is made solely on the immigration judge's speculation and conjecture and not on any evidence in the record. In fact, the country background evidence contradicts the immigration judge's findings in several respects. First, the judge assumes that the Sri Lankan local police and the terrorist detective bureau would work together and realized that the petitioner is not an LTTE member. Well, he said because the applicant had a lot of family members who were in the police bureau, he found it implausible that he would have a fear of the police. Right. And the petitioner actually explained that the local police were a different agency from the security forces, the TVB. And the judge made the assumption that the TVB and the local police would work together. And he compared them actually to the U.S. local police and FBI, which, you know, assuming the judge's assertions about the workings of the FBI and the local police in the U.S. are correct, you still cannot rest an implausibility determination on the assumption that the internal security system of an underdeveloped country such as Sri Lanka that's dominated by violence and a compelling record of human rights abuses by local police and security forces works in the same way that ours does here. Also, there's no evidence in the record to support such an assumption. The State Department Human Rights Report states that sometimes the security forces act independent of the government in Sri Lanka. The immigration judge also states that it's like one of those situations that you watch on TV where if everyone would just sit down and discuss it that they would. That was the most remarkable comment. Yes. Why don't they do it like they do it on TV? If they all just sit and talk about it, it'll be straightened out. Yeah, but, you know, comparing the petitioner's accounts of the events to a TV show has nothing to do with the reality of the situation as it's described by the petitioner and the background reports. No, he didn't say why don't they sit down. He said it reminds him of one of the situations on TV where someone thinks if they sit down and talk about it, it can get straightened out. He didn't say that they should sit down and talk about it. He was just comparing this to a scenario where someone thought if they could sit down and talk about it. Right. That's actually not correct. What he said was this respondent must have some credibility as a businessman in his town. With police friends and so forth, I think they could easily ascertain that he had not had ties to the TAMO. So what he's suggesting is that he just work it out with the police because they can easily ascertain it because he's a credible businessman. Right, but in light of. Well, I guess just for the record, the sentence right before that, he said, this seems to me to be one of those situations that one sees on television where one thinks that if they sit down at a table and talk about it, they can get it straightened out. So. Right. And I think both of those statements rest on the assumption that the TDB is like our FBI, that we go in there, we answer some questions, and we go home. But according to the human rights reports that were submitted into the record, that's not how it works. Most of a lot of the people who go to get interrogated are detained and sometimes never returned. They're tortured. They're killed. So I don't think that you can make the comparison or the assumption that that that's the way it would have turned out. He also states that he doesn't understand why the LTT would persecute him simply because he's the employer of this alleged terrorist. But he ignores the petitioner's testimony that the group wants their member released from custody. He also ignores the country reports that the LTT is responsible for killings, disappearances, torture, extortion. He ignores the newspaper article that corroborates that he was threatened by this group. According to the Ninth Circuit case law, testimony that's deemed implausible based on speculation and conjecture alone cannot sustain an adverse credibility finding. I was going to ask you about the newspaper article. Isn't it true that the newspaper article did not contain his name? It did not contain his name. And so the IJ was not compelled to accept that article as proof. No, but it provided it stated that it was a Chinese restaurant in that village and which which is consistent with the documents in the testimony. It stated that the arrest of a prominent LTT member was was made at the restaurant, which is consistent with his testimony. And it stated that the owner had had fled because he was getting threats from the LTT, which is all consistent with this testimony. So it could have been someone else. And he adopted that story that the IJ was entitled to come to that conclusion as well, since no one was named in the article. Yes, he could have. But there's nothing in the record that supports an incredibility finding. There's no inconsistencies in his within his testimony. That's why the date was so important, because if someone had just read this in the newspaper and borrowed the story as his own, that's why the date would be so crucial to know the details of it if it happened so that you could confirm that. The date was not in the newspaper either. And the date was not in his. That's what I'm saying. The date was not in the newspaper. That's why it was so important for that detail to be crystallized in the IJ's mind. I mean, one could have. He could have made up anything if I were to adopt the story. As long as it's consistent. You know, he could have remained with 98 or he could have said, you know, now that I recall, it was 98. But he didn't. He said, no, it was 96. And I realized I made the mistake. So thank you. Good morning. Please support David Downheimer on behalf of the Attorney General. The record in this case does not compel reversal of the immigration judge's adverse credibility finding. Petitioner's testimony and evidence were inconsistent, and his testimony was internally inconsistent and found to be implausible by the immigration judge. Petitioner, the specific inconsistency deals with the date that the petitioner allegedly hired this cook. Although there. Although the court has held that an inconsistency as to a date may not go to a heart of a claim of persecution, it may not be sufficient for an adverse credibility finding. In this case, the changing date has to do with his the central claim to his persecution. The petitioner argues that he hired this cook and that this cook was then arrested as an alleged LTTE member. His inability to provide a consistent story as to his relationship with this with this cook undercuts the credibility of his set of the one claim. Why does it matter when he hired the cook in relation to his fear of persecution because the cook happened to be an LTTE member? Well, I think it goes his inability to provide consistent testimony with regard to his relationship to that person. Answer my question. Well, I think it goes to his alleged fear that he would be considered an LTTE member. He would be considered by the TDB to have knowledge of that individual's LTTE membership. And he says it in his own testimony that that was the reason why he lied to the police, was that he told the police that he had only hired this person six months ago because he thought that his relationship with that person for a longer period of time would make him look as if he would have had to have known that that person's involvement in the LTTE. So under his own admissions, he's saying that the length of time that he had hired this individual and had a relationship with this individual was important with respect to his claimed fear of persecution by the TDB. But yet, having said that, his testimony and his evidence of record is inconsistent with regard to that date by a span of four years. And so the immigration judge looked at that and saw that as a specific inconsistency on the record, which undercut his credibility. Did the IJ judge mention that the newspaper wasn't or might not have been the petitioner, the newspaper article wasn't or might not have been about the petitioner? The newspaper articles discussed in the beginning of the trial at page 70 of the record. The immigration judge, though, in his opinion. I think in his decision, Your Honor, I think the only reference to it in his decision is a passing reference to the Exhibit 3, which it was before the immigration judge. So he did not find that it was a basis for concluding that the petitioner was not credible? No, like based on a forensic analysis or the fact that the article, for instance, didn't appear to be part of the newspaper or whatever. I don't believe there was a history done on that particular newspaper before the court. I think what happened was it came before the court. It was objected to by the trial counsel because it didn't contain a date and had no source and didn't list the actual name of the petitioner. The IJ on page 72 of the record deferred ruling on that objection. It does not appear that the IJ actually ever ruled on the admissibility of the document. However, as argued in our brief, it really goes to a weighing of the evidence before the immigration judge at the time. The immigration judge has this article that doesn't list the name of the petitioner. I know what it doesn't say, but what it does say is that the chief inspector of police, TDB, further stated that the owner of the restaurant had left the area because of threats from the LTT organization. As such, it has not been possible to interrogate him, which obviously is consistent with what happened to this man. Correct. Also, there is one reference in the record during the trial where the immigration judge noted that the article itself refers to a restaurant, I believe, and the police reports refer to a hotel. That was explained by the petitioners that in Sri Lanka they refer to it as a hotel. There's no indication whether that played into the immigration judge's decision, other than that that was evidence that was before him. Yes, but he needs to articulate his reason, so if he didn't say that as a reason, then we can't consider it. I understand. Well, absent any further questions, Your Honor, that's all I have. No, I have none. Thank you. Thank you.
judges: Wardlaw, Rawlinson Cebull